In the Matter of the Claim of FRANK RAYMOND, Respondent, *v.* THE ESTATE OF ANDREW DAVIS, Deceased, and Another, Appellants.

Fourth Department, October 1, 1924.

Executors and administrators — claim against estate — claim based on joint venture between claimant and testator — claim that testator received cash in addition to stock for land purchased under agreement and deeded to corporation not sustained by evidence.

The claimant's claim against the estate of the testator is based on a joint venture in the purchase of land under an agreement entered into between the claimant and the testator by which the testator was to furnish the money to pay for certain properties with the understanding that the interest of the parties was to be on the basis of one-third to the claimant for procuring the option on the properties and two-thirds to the testator. The properties were purchased and the title thereto, with the exception of one piece, was taken in the name of the testator who subsequently conveyed the property to a corporation and received $15,000 worth of stock and a check for $15,000 from the corporation. The finding that the testator received $15,000 in cash from the corporation is against the weight of the evidence, since it appears that at the same time that he received the check from the corporation he gave to each of three directors of the company checks for $5,000, and that these checks, together with the check received by the testator from the corporation, were all deposited at the same time in the same bank, so that in the absence of evidence that the money paid

to the directors was a loan which was subsequently repaid, it appears that the testator received no cash from the corporation and so the claimant cannot recover on the theory that the testator received the cash.

APPEAL by the defendants, The Estate of Andrew Davis, deceased, and another, from a decree of the Surrogate's Court of the county of Chautauqua, entered in the office of the surrogate of said county on the 6th day of November, 1923; also from an order of the County Court of the county of Chautauqua, entered in the office of said surrogate on the same day, denying the defendants' motion for a new trial of certain certified questions made upon the minutes; also from an order of said County Court, entered in the office of the clerk of said county on the 3d day of December, 1923, denying the defendants' motion to require the county clerk to file with the surrogate of said county an amended certificate and to set aside the verdict of the jury; and also from an order of said Surrogate's Court, entered in the office of the clerk of the county of Chautauqua on the 27th day of September, 1923, directing that certain questions certified be referred to the County Court of said county for trial by jury. (See 202 App. Div. 774.)

The claim was presented to and rejected by Fannie Kelly, as executrix. After reversal with new trial by the Appellate Division (*Matter of Raymond* v. *Kelly,* 201 App. Div. 876; 202 id. 774), the executrix died on or about the 25th day of May, 1922. Thereafter William J. Doty, treasurer of Chautauqua county, was appointed as administrator with the will annexed. The claimant moved for trial before the special surrogate, who, upon demand of the administrator, with claimant's consent, referred the proceeding for trial by jury in the County Court, after overruling, upon special appearance, the administrator's objection to lack of jurisdiction because he had not been substituted.

*John Griffin,* for the appellants.

*Palmer & Rowe* [*Nelson J. Palmer* of counsel], for the respondent.

CLARK, J.:

In 1916 claimant and Andrew Davis, defendant's testator, entered into a joint adventure to acquire certain lands in Chautauqua county containing a deposit of marl and to organize a corporation to develop the property acquired, utilizing this marl deposit in the production of a fertilizer. The arrangement was that claimant should procure options on the lands desired and if later the options were exercised, Davis was to furnish the money to pay for the properties. The interest of the parties was to be on the basis of one-third to claimant for procuring the options and two-thirds

to Davis who furnished the money. Claimant procured certain options and later the property was purchased, Davis paying all the money. The title to the properties was taken in the name of Davis, excepting the Bremer property, worth about $4,000, and in that case title was taken in the name of Raymond, this claimant, and he has retained the property.

On or about the 9th day of March, 1918, after the proposed corporation had been organized, Davis deeded the property where title had been taken in his name to the corporation and he received from the corporation $15,000 par value of its stock and a check of the company for $15,000. At the same time Davis gave to each of three directors of the company checks for $5,000, making $15,000 in all. These three checks and the $15,000 check Davis had received from the corporation were all deposited at the same time in the same bank and the administrator contends that Davis actually received nothing in cash from the company but that the $15,000 check he had received was taken up by checks he had given to the directors and that they were without consideration. In other words, it is the contention of the administrator that Davis' checks given to the directors actually made good the $15,000 check which he had received from the company so that in fact he received nothing for his property excepting $15,000 in stock.

On the death of Davis, claimant presented to his executors a claim for his one-third interest in this enterprise, claiming that he was entitled to one-third of $30,000 on the theory that Davis had received from the company when he deeded over the property where title had been taken in his name, $15,000 cash. The jury found with claimant to the effect that Davis actually received $15,000 in cash from the company in addition to $15,000 of its stock.

That finding is against the weight of the evidence. Of the three directors, Dick, Lamberton and Green, who had received $5,000 checks from Davis, only Green gave evidence on the trial. Claimant sought to establish by Green that he had already paid Davis back the $5,000 represented by the check he had received from Davis. This evidence is neither satisfactory nor convincing.

About all witness Green could say was that it was his " impression " that Davis loaned him the money to pay for the stock which had been issued to him but he admitted he might be wrong about it.

His recollection on the subject was extremely hazy. The fact that all four checks were given at the same time, one to Davis from the company for $15,000 and three $5,000 checks, given to each of three directors, all at the same time and on the same bank, and all four checks being deposited at the same time, point strongly to the idea that Davis' money actually took up the $15,000 check

the company had given and that in fact all he actually received from the company when he turned over the property where title had been taken in his name was $15,000 in stock of the company and of doubtful value. It is to be noted also that the claim as filed made no mention of claim to any share in a cash payment.

As there will have to be a new trial, we would point out that even on claimant's theory his interest in the Bremer property would be on the basis that Davis was to receive in the joint adventure two-thirds of the value of the property and claimant one-third, and the deduction allowed Davis on the Bremer property should be based on the value of the property and not on the amount he had paid for it.

The finding of the jury that Davis received $15,000 in cash besides the $15,000 in stock is contrary to and against the weight of the evidence. Possibly on another trial claimant will be able to show that Davis actually received $15,000 in cash from the company and that the checks of $5,000 each given to the directors at the time he received the $15,000 check from the company were loans that were subsequently paid. But the evidence that Davis actually received $15,000 is so unsatisfactory that I think in the interests of justice there should be a new trial.

The decree of the surrogate entered on the verdict of the jury should be reversed on the facts and a new trial granted, with costs to appellant to abide the event.

HUBBS, P. J., SEARS, CROUCH and TAYLOR, JJ., concur.

Decree reversed on the facts and new trial granted, with costs to appellant to abide event.